## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

HAMZA MALDONADO, a/k/a
Samuel Maldonado,

        Plaintiff,

v.                                Case No.:  3:20-cv-418-BJD-PDB

BAKER COUNTY SHERIFF'S OFFICE,
et al.,

        Defendants.

_____

## ORDER

### I.   Status

Plaintiff Hamza Maldonado (a/k/a Samuel Maldonado), a federal inmate, is proceeding on a pro se complaint for a civil rights violation (Doc. 1-1, Compl.), which he originally filed in state court. Defendants removed the action to this Court (Doc. 1) and moved to dismiss the Complaint (Doc. 4). The Court dismissed Plaintiff's claims against the Baker County Sheriff's Office and the Baker County Detention Center, as well as Plaintiff's access-to-court claim and official capacity claims against Deputy Wyatt Rhoden. (Doc. 33, Order on Mtn. to Dismiss at 18). The Court otherwise denied the motion to dismiss, leaving only a First Amendment retaliation claim against Rhoden in his individual capacity. See id. at 17–18.

This cause is before the Court on Rhoden's Motion for Summary Judgment and Incorporated Memorandum of Law. (Doc. 46, Motion). In support, Rhoden submitted a transcript of Plaintiff's deposition (Doc. 45-1, Def. Ex. 1 ("Plaintiff's Depo.")), Rhoden's declaration (Doc. 45-2, Def. Ex. 2 ("Rhoden Decl.")), a copy of the Baker County Inmate/Detainee Handbook (Doc. 45-3, Def. Ex. 3 ("BCID Handbook")), the docket sheet for a criminal action pending against Plaintiff, United States v. Maldonado, Case No. 3:17-cr-179-TJC-PDB (M.D. Fla.) (Doc. 45-4, Def. Ex. 4), the docket sheet for one of Plaintiff's cases before the United States Court of Appeals for the Second Circuit (Doc. 45-5, Def. Ex. 5), the declaration of Tommy Richardson, Programs Coordinator for the Baker County Detention Center (Doc. 45-6, Def. Ex. 6), and the docket sheet for another civil action that Plaintiff brought in this Court, Maldonado v. Hill, et al., Case No. 3:20-cv-193-HLA-PDB (Doc. 45-7, Def. Ex. 7).

After the Court issued an Order to Show Cause (Doc. 49), Plaintiff filed a brief response opposing the Motion (Doc. 50, Response). He states that he stands on all arguments he has made in this case, Response at 2, which the Court construes as referring to the Complaint. Plaintiff says he did not receive a copy of the Court's order directing him to respond to the Motion for Summary Judgment, but importantly, he does not deny receiving a copy of Rhoden's Motion and exhibits, which Rhoden certifies he served on Plaintiff. Thus, the Court accepts Plaintiff's belated Response and the Motion is ripe for review.

## II.    Summary Judgment Standard

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden to demonstrate that no dispute exists as to any material fact. Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003). All evidence and inferences from the facts must be viewed in the light most favorable to the nonmovant. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).

## III.    Plaintiff's Allegations

Plaintiff filed his Complaint in the Eighth Judicial Circuit Court, in and for Baker County, Florida, on March 26, 2020. He was detained at the Baker County Detention Center at the time.[1] The state court granted Plaintiff leave to proceed in forma pauperis, after which Defendants removed the case here.

The Complaint is somewhat unclear because Plaintiff includes extraneous facts and fails to set forth his allegations plainly. That said, the

---

[1]    Plaintiff is now housed at Tallahassee Federal Correctional Institution.

gist of the Complaint is that Rhoden retaliated against Plaintiff for exercising "his First Amendment rights by filing grievances." See Compl. at 10.[2] According to Plaintiff, on March 23 and 24, 2020, Rhoden rejected his requests to use the telephone; denied him extra time in the law library; denied him the ability to "seek remedy with a shift supervisor" about extra time in the law library; threatened Plaintiff with harm by threatening to put him in a restraint chair; and discriminated against him by segregating Plaintiff, who is African-American, from going to the law library with three fellow inmates, Mr. Hill, Mr. Smith, and Mr. Thompson, who happen to be Caucasian. Id. at 4, 7–8. Plaintiff asserts that Rhoden did these things to retaliate against him for filing grievances and lawsuits. Id. at 4, 10.

As Defendants, Plaintiff named the Baker County Sheriff's Office, the Baker County Detention Center, and Deputy Rhoden. Id. at 3. As relief, Plaintiff seeks nominal, compensatory, and punitive damages. Id. at 11. On January 13, 2021, the Court dismissed Plaintiff's claims against the Baker County Sheriff's Office and the Detention Center, leaving Rhoden as the only Defendant. Order on Mtn. to Dismiss (Doc. 33). The Court also dismissed an

---

[2]    Plaintiff also asserts that Rhoden retaliated against him for having filed other lawsuits and because he is Muslim and African-American. See id. at 4, 6. Plaintiff does not allege that he sued Rhoden in any other civil actions and says only in passing that he believes Rhoden discriminated against him. Thus, as the Court stated in its Order on Defendants' Motion to Dismiss, it appears these allegations are not relevant to his primary claim that Rhoden retaliated against him for engaging in protected speech. (Doc. 33 at 4 n.3).

access-to-court claim and any official-capacity claim against Rhoden, leaving only a First Amendment retaliation claim against Rhoden in his individual capacity. Id. at 14, 16–18.

## IV.   Summary of the Arguments

Rhoden argues that there is no genuine issue of material fact because Plaintiff cannot satisfy two of the elements of his First Amendment retaliation claim. Rhoden concedes, for purposes of summary judgment, that Plaintiff was engaged in constitutionally protected speech when he filed grievances. Motion at 8. However, Rhoden argues that "Plaintiff has not alleged and will be unable to establish facts to support elements 2 and 3 of his First Amendment retaliation claim." Id. According to Rhoden, Plaintiff has not alleged and cannot establish either that Rhoden's actions would have deterred a person of ordinary firmness from engaging in constitutionally protected speech or that there was a causal connection between Rhoden's actions and a retaliatory motive. Id. at 8–22. Rhoden further argues that he is entitled to qualified immunity. Id. at 22–24.

Rhoden submits several exhibits supporting summary judgment, including a copy of his sworn declaration. Rhoden Decl. (Doc. 45-2). Rhoden denies that he ever retaliated against Plaintiff for filing grievances or complaints, or discriminated against him based on his race or religion. Id. ¶¶ 18, 21, 25, 28, 33, 36–37. He states that every decision he made about such

things as telephone usage or who received extra time in the law library were based on space limitations, who had received extra time in the library, and the need to ensure the safe and orderly operation of the facility. Id. ¶¶ 17, 38–40.

Plaintiff opposes the Motion. Response (Doc. 50). He does not directly rebut Rhoden's arguments or point to any supporting evidence of his own, such as affidavits or depositions. Nor does he designate any disputed facts. Instead, Plaintiff states only that he "will stand on all and any arguments that he has already made in this case." Id. at 2. Since the Court does not have to consider materials not cited, Fed. R. Civ. P. 56(c)(3), the Court construes Plaintiff's Response to mean he will rely on the allegations in his Complaint.[3]

## V.   Analysis and Conclusions

### A. First Amendment Retaliation Claim

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a retaliation claim, an inmate must establish that:

> (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory

---

[3]     Plaintiff has submitted around two dozen pro se filings in this case, but his Response cites none of them specifically. Under Rule 56(c)(3), the Court need not – and will not – comb through Plaintiff's filings in search of his arguments or favorable evidence. A.L. v. Jackson Cnty. Sch. Bd., 635 F. App'x 774, 786–87 (11th Cir. 2015).

action…and the protected speech [the grievance].

O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (first and third alterations in original). Because grievances are protected speech, "[a] prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" Farrow, 320 F.3d at 1248 (quoting Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989)).

To establish causation, a plaintiff must "do more than make 'general attacks' on a defendant's motivations and must articulate 'affirmative evidence' of retaliation to prove the requisite motive." Jackson v. Assistant Warden, No. 16-16107-E, 2018 WL 7858414, at *2 (11th Cir. Dec. 6, 2018) (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)). In other words, "the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)). A temporal relationship between the protected activity and the adverse action can be circumstantial evidence of causation, but, absent other evidence, "temporal proximity must be very close." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (ADA retaliation case). "If there is a substantial delay between the protected expression and the adverse action[,] in the absence of other evidence tending to show causation,

the complaint of retaliation fails as a matter of law." Id. Further,

> It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. [Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695, 1701 (2006)] (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (emphasis in original).

For purposes of summary judgment, Rhoden concedes that Plaintiff was engaged in protected speech. So, only the "adverse action" and causation elements are at issue.

## 1.  Whether Plaintiff can show an "adverse action"

Liberally reading the Complaint, the Court identified five allegations that could be construed as retaliatory adverse actions: (1) the alleged denial of Plaintiff's use of the telephone on March 23 and 24, 2020; (2) the denial of extra time in the law library; (3) refusing to allow Plaintiff to speak to the shift supervisor about extra time in the law library; (4) allegedly threatening to put Plaintiff in a restraint chair; and (5) preventing Plaintiff from using the law library with three Caucasian inmates. Order on Mtn. to Dismiss at 4; see also Motion at 2–3.

Addressing each action individually, Rhoden argues that none of these would deter a person of ordinary firmness from exercising his or her right to

free speech. Rhoden points out that, according to Plaintiff, he filed 652 grievances in less than two years at the Baker County Detention Center. Motion at 4 (citing Compl. at 8). Those included five grievances against Rhoden between October 2, 2019, and October 12, 2019 (which were attached to the Complaint), Compl. at 9 n.1, 13–20, and two more grievances against Rhoden on March 24 and 25, 2020 – right after the alleged retaliatory conduct (which grievances were not attached to the Complaint), see Motion at 5. Altogether, Plaintiff testified that he filed 26 grievances against Rhoden. Plaintiff's Depo. (Doc. 45-1) pp. 20:24–21:1.[4] Plaintiff also testified on deposition: "Every time he [Rhoden] did something wrong, I exercised my constitutional right, let them know what was going on." Id., p. 28:15–17; see also id., p. 29:2–6 (admitting that nothing Rhoden did stopped Plaintiff from filing complaints or grievances). Rhoden argues that "[b]ecause Plaintiff has testified that Deputy Rhoden's alleged conduct did not deter Plaintiff from exercising his protected speech, Plaintiff cannot establish that Deputy Rhoden's alleged conduct would deter a person of ordinary firmness." Motion at 12 (citations omitted).

Taking the facts in the light most favorable to Plaintiff, and assuming Rhoden committed each of the alleged actions, a reasonable jury could conclude that they qualified as an "adverse action." Whereas Rhoden analyzes each

---

[4]      Citations to the deposition will refer to the Bates Stamp page number in the upper-righthand corner of the document, not the page number designated by CM/ECF.

action separately, the case law requires that retaliatory actions be examined in the aggregate to determine whether they would deter a person of ordinary firmness from engaging in protected speech. See Bennett v. Hendrix, 423 F.3d 1247, 1254–55 (11th Cir. 2005) (plaintiff could prevail on retaliation claim based on an alleged "prolonged and organized campaign of harassment by local police officers."(emphasis added)); Akins v. Fulton Cnty., Ga., 420 F.3d 1293, 1301–02 (11th Cir. 2005) (considering retaliatory conduct both individually and in the aggregate). Even if none of the five alleged actions, considered individually, would be enough to deter a person of ordinary firmness, a reasonable jury could find that they would in the aggregate. See Bennett, 423 F.3d at 1255 (citing with approval, e.g., Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003) (holding that retaliatory issuance of parking tickets totaling $35 created a jury issue because the defendant "engaged the punitive machinery of government in order to punish Ms. Garcia for speaking.")); Harper v. Admin. Lieutenant, 857 F. App'x 551, 554 (11th Cir. 2021) (although inmate had no constitutional right to job as head law clerk of the prison library, loss of job would deter a person of ordinary firmness from exercising his right to free speech); but see Smith v. Israel, 619 F. App'x 839, 842 (11th Cir. 2015) (prisoner had not shown that being strip-searched and handcuffed for 20 to 30 minutes would deter a person of ordinary firmness from filing grievances,

considering that prisoner later filed a verbal request and a grievance).[5]

Rhoden leans on Plaintiff's deposition testimony that Rhoden's actions did not deter him from filing grievances. This evidence does show that Plaintiff was not subjectively deterred from speaking. But the Eleventh Circuit has adopted a strictly objective test for First Amendment retaliation claims, looking at whether the defendant's conduct would deter a person of ordinary firmness from exercising the right to free speech. Bennett, 423 F.3d at 1251–52. The court rejected a subjective standard because "'a subjective standard would expose public officials to liability in some cases, but not in others, for the very same conduct, depending upon the plaintiff's will to fight.'" Id. (quoting Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)). "While the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity, it is not dispositive." Id. at 1255 (quoting Constantine, 411 F.3d at 500). Although Rhoden's alleged conduct did not deter Plaintiff from filing grievances, the fact that he filed 652 grievances in less than two years suggests he is simply an "unusually hardy speaker[]." Id. at 1252. Thus, that Plaintiff filed grievances against Rhoden right after the alleged conduct does not necessarily reflect how an ordinary person would respond.

---

[5]    Smith v. Israel appears to be an outlier. Besides, unpublished opinions are only persuasive but non-binding.

Construing the facts in the light most favorable to Plaintiff, the Court finds a genuine issue as to whether Plaintiff experienced an "adverse action."

## 2. Plaintiff fails to show a genuine issue as to causation

The flaw in Plaintiff's case is that he has not shown, and is unable to show, a causal connection between Rhoden's actions and Plaintiff's exercise of free speech. The Complaint does not allege that Rhoden said anything about Plaintiff's grievances when he took any of the adverse actions. There is no temporal proximity between the adverse actions and Plaintiff filing grievances or complaints about Rhoden. And Plaintiff's assertions of causation are conclusory or not based on personal knowledge or observation.

When the nonmoving party bears the burden of proof at trial, as Plaintiff does on each element of his retaliation claim, the party moving for summary judgment may demonstrate the absence of a genuine issue of material fact by "'showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party satisfies its initial burden of proving the absence of a genuine issue of material fact, id. at 323, the burden shifts to the nonmoving party to "go beyond the pleadings" to establish that there is a "genuine issue for trial," id. at 324. The nonmoving party must point to affidavits, depositions, answers to interrogatories, or admissions on file to "designate specific facts

showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593–94 (11th Cir. 1995). A nonmoving plaintiff may rely on his own verified complaint as if it were an affidavit to dispute a material fact, but only if the verified complaint meets the requirements of an affidavit under Rule 56. <u>Barker v. Norman</u>, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981). Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Further, for a sworn statement to create a genuine issue of material fact, it should contain "non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety," which "describe the external world as [the affiant] observed it at the time and are based on [his] first-hand personal knowledge, not [his] subjective beliefs." <u>Feliciano v. City of Miami Beach</u>, 707 F.3d 1244, 1253 (11th Cir. 2013)

Rhoden demonstrates the absence of evidence of a causal relationship between his actions and Plaintiff's exercise of free speech, an element on which Plaintiff bears the burden of proof. <u>See</u> Motion at 8–22. As Rhoden contends, there is no competent evidence that Rhoden was subjectively motivated to punish Plaintiff for exercising his right to free speech. Thus, Plaintiff must "go beyond the pleadings" to establish that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324.

Plaintiff fails to do that. He stands only on his own arguments to oppose summary judgment, see Response at 2, which the Court takes as a reference to his Complaint. A plaintiff "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (quotation marks and alterations omitted). And while a verified complaint might suffice, the Complaint here fails to create a triable issue as to causation because it does not meet the requirements for a verified complaint or an affidavit. Under a section of the Complaint titled "Verification," Plaintiff states:

> I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matter alleged on information and belief, and, as to those I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Compl. at 11–12 (emphasis added). Throughout the Complaint, Plaintiff relies on conclusory assertions, "information and belief," and secondhand accounts (rather than personal knowledge) to show causation. But "statements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing Pace v. Capobianco, 283 F.3d 1275, 1278–79 (11th Cir. 2002)).

For example, Plaintiff says that on March 23, 2020, Rhoden denied him the ability to use the telephone to speak with his family and attorney "for evil

and vindictive reasons no other than for retaliation because of the civil actions taken against the Baker County Sheriff's Office." Compl. at 4; see also id. at 6 (stating that Rhoden prevented Plaintiff from using the law library with a fellow inmate "for evil and unconstitutional reasons," including retaliation and racism). These are not facts, but conclusory assertions. Plaintiff states that "[b]ased upon information and belief," unnamed "[o]fficers and inmates have … claimed to have heard Officer Rhoden state 'F-cking Muslims and their law suits'" and express "prejudice towards Black Muslims." Id. at 4. This statement fails to satisfy Rule 56(c)(4)'s personal knowledge requirement, and Plaintiff does not point to an affidavit or declaration from anyone who does have personal knowledge.[6] Plaintiff asserts: "There is … a casual [sic] connection because the defendants are doing what they are doing and their adverse actions are directly related to Mr. Maldonado's protected conduct." Id. at 8. Again, this is a conclusory assertion.[7] "[M]ere conclusions and unsupported

---

[6]     Plaintiff also states that Rhoden made a "clear confession out loud" in which he "confirmed he was purposefully separating black and white inmates and stopping [Plaintiff] from continuing to go [to the law library] with the same exact inmates that he had been for the past 3 weeks," id. at 6, and that Rhoden "admitted he was indeed purposefully keeping the 3 white inmates from working with [him]," id. at 7. Nothing in this "confession" shows that Rhoden – if he did separate Plaintiff from the three Caucasian inmates on purpose – did so in retaliation for Plaintiff filing grievances or complaints. Nor does Plaintiff state whether he heard this "confession" himself. Plaintiff also offers no details about this "confession," such as what exactly Rhoden said, to whom he said it, or when. Thus, this alleged confession is not relevant to the retaliation claim, does not appear to be based on personal knowledge, and is conclusory at best.

[7]     As other examples, Plaintiff says, "[i]t is believed Officer Rhoden had engaged in … [a] conspiratorial campaign [of] retaliation, because of the pending civil action against Officer

factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis, 432 F.3d at 1327 (citations omitted).

There is one pertinent statement that is based on personal knowledge. Plaintiff alleges that on March 23, 2020, "[a]s Officer Rhoden came down the stairs after a security check, he said 'keep talking shit, imam put your ass in the chair.'" Compl. at 5. But this "scintilla of evidence" is not enough to prevent summary judgment. Anderson, 477 U.S. at 252. Rhoden made no mention of Plaintiff filing grievances or engaging in protected speech. Nor is it reasonable to infer that Rhoden was referring to grievances when he said, "keep talking shit, imam." Before Rhoden said this, the last time Plaintiff filed any grievance against Rhoden was October 12, 2019, or over five months earlier. See Compl. at 9 n.1, 13–20. Therefore, this one statement is not enough to create a genuine issue for trial about whether Rhoden was subjectively motivated to punish Plaintiff for exercising his right to free speech.

Temporal proximity between a protected activity and an adverse action can also constitute circumstantial evidence of causation, but, absent other evidence, "temporal proximity must be very close." Higdon, 393 F.3d at 1220. More precisely, the plaintiff must show temporal proximity between the

---

Jessica Looby" and that Plaintiff "knows personally from other officers and inmates that also know these defendants [who] say they are 'gunning' for [Plaintiff]." Id. at 9. Again, these allegations are based on belief or unidentified secondhand sources, not personal knowledge.

defendant's <u>knowledge or awareness</u> of the protected expression and the adverse action. <u>Id.</u> (citing <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001); <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1180 n.3 (11th Cir. 2003)). Here, the alleged retaliatory conduct began March 23, 2020, and continued on March 24. The last time Plaintiff filed any grievance against Rhoden before those dates was October 12, 2019. A gap of over five months is too great to support an inference of causation. <u>See</u> <u>Breeden</u>, 532 U.S. at 273 (citing with approval cases holding that delays of three and four months were too great to support a causal connection).[8] Plaintiff also filed two civil lawsuits in state court as recently as March 18, 2020 (which were removed to this Court), but neither lawsuit was against Rhoden. <u>See</u> <u>Maldonado v. Baker Cnty. Sheriff's Office, et al.</u>, No. 3:20-cv-359-TJC-MCR (M.D. Fla.); <u>Maldonado v. Blue, et al.</u>, No. 3:20-cv-364-BJD-JBT (M.D. Fla.). Indeed, none of Plaintiff's lawsuits, prior to this one, were against Wyatt Rhoden.[9] Even if Plaintiff could show temporal proximity, he points to no evidence that Rhoden had actual knowledge or awareness of a particular grievance or lawsuit. <u>See</u> <u>Higdon</u>, 393

---

[8]     Plaintiff says he filed a grievance on March 24, 2020, but it is unclear if he filed it before or after Rhoden's alleged actions that day. Regardless, that grievance could not explain why the actions began on March 23. And Plaintiff provides no evidence that Rhoden <u>knew</u> about the March 24 grievance <u>when</u> Rhoden denied Plaintiff's telephone requests or denied him extra library time that day. <u>See</u> <u>Higdon</u>, 393 F.3d at 1220.

[9]     Some of Plaintiff's previous lawsuits were against Baker County Sheriff Scotty Rhoden. <u>See, e.g.</u>, <u>Maldonado v. Baker Cnty. Sheriff's Office, et al.</u>, Case No. 3:20-cv-83-HLA-MCR. In his deposition, Plaintiff stated he believes Wyatt Rhoden is Sheriff Rhoden's son, but he admits he cannot prove the two are related. Plaintiff's Depo., p. 54:9–16.

F.3d at 1220 (requiring temporal proximity between the defendant's awareness of the protected expression and the adverse action).

In sum, viewing the facts in the light most favorable to Plaintiff, he fails to offer sufficient evidence that Rhoden was subjectively motivated to punish him for a protected expression. Rhoden is thus entitled to summary judgment.

### 3. Rhoden demonstrates non-retaliatory grounds for his actions

Even if Plaintiff could muster some evidence that Rhoden acted with a retaliatory motive, that would not be enough to create a triable issue as to causation. "The final step in the First Amendment retaliation analysis allows the [defendant] to avoid liability if it can prove that it would have taken the same actions in the absence of the protected speech." Akins, 420 F.3d at 1305; see also Nieves, 139 S. Ct. at 1722 (a plaintiff alleging a First Amendment retaliation claim must show that the retaliatory motive was the "but-for" cause of the adverse action, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."). Thus, "[t]he defendant can prevail on summary judgment if [he] can show [he] would have taken the same action in the absence of the protected activity." Smith v. Sec'y, Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013) (citation omitted).

Rhoden submits evidence, including sworn declarations and a copy of the Baker County Detention Center's policies, showing that he would have taken

the same actions even if Plaintiff had filed no grievances or complaints. Plaintiff fails to rebut Rhoden's proffered evidence with anything besides his own allegations, which are insufficient to defeat summary judgment. The Court addresses each adverse action.

**Denial of Telephone Requests on March 23 and 24, 2020:** Plaintiff alleges that on March 23, 2020, Rhoden denied him use of the telephone to call his family or his attorney "for evil and vindictive reasons," including retaliation for filing civil actions against the Baker County Sheriff's Office. Compl. at 4. The next day, after Plaintiff was removed from the law library, he again asked to use the phone but Rhoden denied his request. Id. at 6. According to Plaintiff, Rhoden told him: "Officer Reeder said you already used the phone." Id. Plaintiff denied that he had used the phone earlier, and informed Rhoden that he had filed a sick-call request and two grievances against him (Rhoden). Id. Plaintiff does not say what grievances he is referring to, when he filed them, or what Rhoden's reaction was (if any) when Plaintiff pointed out the grievances. At any rate, according to Plaintiff himself, Rhoden denied him use of the telephone because he had already been on the telephone.

Rhoden explains that many detainees want to use the jail's phone and other services at various times, but "the orderly operation of the Detention Center" does not permit inmates to use the services whenever they please. Rhoden Decl. (Doc. 45-2) ¶¶ 10–11. Still, Rhoden states that he "tr[ied] to be

19

reasonable with everyone" in accommodating the inmates' requests. <u>Id.</u> ¶ 11. According to the jail's policies, telephones are available for use "during normal facility operation from 8:00am–10:30pm," but "[p]hone calls may be limited during peak usage periods" and "[t]here is a 20 minute time limit per call." BCID Handbook (Doc. 45-3) § 23. For attorney phone calls, the inmate must submit a request form to the Programs Coordinator and the Programs Coordinator will schedule the phone call. <u>Id.</u> "Legal phone calls are on a first come-first serve basis and are scheduled Tuesday through Friday during regular business hours." <u>Id.</u> According to Rhoden, "[t]he officer in confinement is responsible for picking up detainees to take them to their scheduled phone calls with their attorneys," which "take place in the law library, not on the dorm phone." Rhoden Decl. ¶ 24. Rhoden denies that he ever prevented Plaintiff from participating in a <u>scheduled</u> phone call with his attorney. <u>Id.</u> ¶ 25. Indeed, Plaintiff does not allege that the phone calls he requested with his attorney were scheduled calls. More broadly, Rhoden denies that he ever considered any grievances filed by Plaintiff when making decisions about telephone usage, either in March 2020 or at any other time. <u>Id.</u> ¶¶ 38–39. Rhoden states that "[e]very action and decision [he] made related to [Plaintiff] was based on maintaining the orderly operation of the detention facility, and

not because of any grievance or lawsuit that [Plaintiff] had filed." Id. ¶ 40.[10]

Rhoden shows that he denied Plaintiff's requests to use the telephone for reasons unrelated to him filing grievances. Indeed, Plaintiff admits he was not the only inmate whose phone requests Rhoden denied. Plaintiff's Depo. pp. 72:21–73:5; see also Rhoden Decl. ¶ 16 ("In addition to [Plaintiff], I have denied other detainees['] requests to use the telephone."). Plaintiff points to no evidence that refutes Rhoden's non-retaliatory grounds for denying Plaintiff's requests to use the telephone on March 23 and 24, 2020. See Response.

**Denial of extra time in the law library:** Plaintiff alleges that on March 23 and 24, 2020, Rhoden denied him extra time in the law library even though Rhoden gave additional time to other inmates. Compl. at 4–6. On March 23, 2020,

> Officer Reeder placed [Plaintiff] and another inmate in the law library, during that time the other inmate used the computer for about an hour. As the shift changed Officer Rhoden proceeded to remove him from the law library, stating "Your time is up." [Plaintiff] then stated "I just got on the computer, I've been on for about 15 minutes. I have court deadlines that I have to meet." Officer Rhoden's reply was "You've had your hour, come on."

Id. at 5. Plaintiff contends that Rhoden did the same thing the next day. Id. at

---

[10]    Inmates retain a basic First Amendment right to have telephone access to communicate with family members or their attorneys, but that right is not unfettered. See Pope v. Hightower, 101 F.3d 1382, 1384–86 (11th Cir. 1996). Jails and prisons may validly promulgate regulations, even if they impinge on an inmate's constitutional rights, if such regulations are "reasonably related to legitimate penological interests." Id. at 1384 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Ensuring a fair "allocation of prison resources" is a legitimate consideration. Id. (citations omitted).

6. Plaintiff asserts that Rhoden was trying to hinder his ability to meet court deadlines, id. at 5, and "has been retaliating against [him] since the first 5 complaints relating to law library use," id. at 6. Plaintiff claims to have had an agreement with the Programs Coordinator, Tommy Richardson, to get extra time in the law library, id. at 5, but Rhoden and Richardson say they were unaware of any such agreement, Rhoden Decl. ¶¶ 20, 29; Richardson Decl. ¶ 4.

   As with telephone services, Rhoden explains that many detainees want to use the law library at various times, but "the orderly operation of the Detention Center" does not permit inmates to use the services whenever they wish. Rhoden Decl. ¶¶ 10–11. Richardson, the Programs Coordinator, explains that during the 2019-2020 timeframe, 500 detainees had to share two law libraries (with one computer each), which also served as spaces for attorney phone calls. Richardson Decl. ¶ 6. Thus, according to Richardson, "[i]t is not feasible for every detainee to use the law library at the same time. Therefore, detainee use of the law library (including extra law library time) is carefully scheduled." Richardson Decl. ¶¶ 6–7; see also Rhoden Decl. ¶¶ 12–13. If an inmate needs extra time in the law library, he must submit a request, BCID Handbook § 25, and "[e]xtra law library time may be offered … when space, staffing, and the security requirements of the Facility permit." Richardson Decl. ¶ 8. Richardson states that Plaintiff often requested, and often received, additional law library time. Richardson Decl. ¶ 9. According to Rhoden, even

though Plaintiff was denied extra law library time on a few occasions, he still spent more time in the library than any other inmate he supervised. Rhoden Decl. ¶ 14. Rhoden adds that he denied other detainees' requests for extra law library time as well. Id. ¶ 15.

Rhoden denies that he ever refused Plaintiff his regularly scheduled hour of library time during his shift, id. ¶ 21[11], and states that Plaintiff declined his regular hour of library time more than once, id. ¶ 22. Rhoden denies that he ever considered any of Plaintiff's grievances when deciding who received extra time in the law library. Id. ¶¶ 38–40. Rhoden states that he "ma[d]e decisions regarding who to send to the law library for extra time based on space limitations as well as who has already been provided extra time. I tr[ied] to be reasonable and accommodate as many requests as possible while ensuring the safe and orderly operation of the facility." Id. ¶ 17.

Rhoden demonstrates that he denied Plaintiff's requests for extra library time for reasons unrelated to filing grievances. Plaintiff fails to rebut Rhoden's explanation and he designates no disputed facts in this regard. See Response.

**Refusal to let Plaintiff speak to shift supervisor about extra time in the law library:** Plaintiff alleges that after he was removed from the law

---

[11]     On deposition, Plaintiff asserted for the first time that Rhoden also denied him his regularly scheduled hour of library time. Plaintiff's Depo., p. 76:5–19. But the Complaint alleges only that Rhoden denied Plaintiff extra time in the law library. Further, a party may not amend or expand his claims via deposition. See Fed. R. Civ. P. 15(a).

library on March 23, 2020, "he addressed Officer Rhoden respectfully to speak to Lt. Warren," the shift supervisor, "to remedy the issue for extra time in the law library to complete court deadlines." Compl. at 5. According to Plaintiff, Rhoden responded: "I'm not calling him." Id. Plaintiff says he returned to his cell but later told Rhoden "that he needed to use the phone and file a grievance." Id. Rhoden denied this request. Id.

In his declaration, Rhoden states:

> Pursuant to Baker County Detention Center policy and the Inmate/Detainee Handbook, detainees who wish to complain to a supervisor regarding their treatment by corrections staff must file a grievance. Detainees do not have the option of demanding to speak with a Lieutenant any time they disagree with a decision by corrections staff.

Rhoden Decl. ¶ 26. The Baker County Inmate/Detainee Handbook contains a section on grievance procedures. BCID Handbook § 34. While an inmate "may orally present an informal grievance to any staff member within five days after the event has occurred," the handbook states that efforts should be made to resolve an issue "at the lowest level possible." Id. Grievances directed at a higher-level official, such as a supervisor, must be submitted as a formal written grievance. See id.

Rhoden demonstrates that he denied Plaintiff's request to speak to Lieutenant Warren for non-retaliatory reasons. Under the jail's grievance procedures, "[d]etainees do not have the option of demanding to speak with a Lieutenant any time they disagree with a decision by corrections staff." Rhoden

24

Decl. ¶ 26.[12] Plaintiff does not rebut this fact. <u>See</u> Response.

**Putting Plaintiff in the restraint chair:** Plaintiff alleges that Rhoden threatened to put him in a restraint chair for filing grievances and complaints. <u>See</u> Compl. at 4, 5. According to Plaintiff, as Rhoden was coming down the stairs after a security check on March 23, 2020, "he said 'keep talking shit, imam put your ass in the chair.'" <u>Id.</u> at 5.

Rhoden denies that he ever threatened Plaintiff with violence or with putting him in a restraint chair, Rhoden Decl. ¶¶ 33, 35, much less in retaliation for filing grievances, <u>id.</u> ¶¶ 36, 40.[13] Rhoden explains: "A restraint chair is a physical restraint used to prevent detainees with self-harm tendencies from hurting themselves. Only a supervisor can order that a detainee be placed in a restraint chair. I have only assisted with placing a detainee in a restraint chair one time." <u>Id.</u> ¶ 34. Rhoden does not recall that Plaintiff ever exhibited signs of wanting to harm himself. <u>Id.</u> ¶ 35. Plaintiff admits Rhoden never put his hands on him. Plaintiff's Depo., pp. 42:24–43:1.

As the Court explained earlier, there is a lack of evidence of a causal

---

[12]    While an inmate has a First Amendment right to file a grievance, <u>Farrow</u>, 320 F.3d at 1248, an inmate has no right to speak to whomever he wishes, whenever he wishes, in whatever manner he wishes. Instead, he must follow a jail's or prison's established grievance protocols. <u>Cf.</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules….").

[13]    The Court must assume, for purposes of summary judgment, that Rhoden said he would put Plaintiff in a restraint chair, but it is not required to assume that this had a causal relationship with Plaintiff filing grievances. There is no evidence of the latter.

relationship between Plaintiff filing grievances and Rhoden threatening to put Plaintiff in a restraint chair (or any other adverse action). According to Plaintiff, Rhoden said he would put Plaintiff in a restraint chair if he "ke[pt] talking shit," not because he filed grievances (the last grievance against Rhoden having been filed five months earlier). Rhoden submits evidence that he could have put Plaintiff in a restraint chair only if (1) he had orders to do so from a supervisor and (2) Plaintiff was going to harm himself. Neither party disputes that neither condition was met. Thus, it is undisputed that Rhoden could not have put Plaintiff in a restraint chair merely for filing grievances, and such an action would have required an order from a supervisor.

**Preventing Plaintiff from using the law library with fellow detainees:** Finally, Plaintiff alleges that Rhoden tried to hinder Plaintiff from prosecuting a civil case about a religious matter with a fellow inmate, James Hill. Compl. at 5. Plaintiff states that for two weeks, he, Mr. Hill, and two other inmates went "to the law library without issue after haircuts." Id. at 6. But, Plaintiff claims, on March 23, 2020, Rhoden prevented Plaintiff (who is African-American) from going to the library with the three other inmates (who were Caucasian). See id. at 6, 8; Plaintiff's Depo., p. 87:4–12. Plaintiff alleges that Rhoden did so both to racially segregate the inmates and to retaliate against Plaintiff for filing grievances. Compl. at 6–8. Plaintiff also suggests that Rhoden's actions prevented him from meeting a court deadline. Id. at 4.

Rhoden does not deny that he did not allow Plaintiff to go with Mr. Hill and the other two inmates to the law library on March 23, 2020. However, he denies that it had anything to do with race or because Plaintiff filed grievances or complaints. Rhoden Decl. ¶¶ 18, 36–40. Rhoden also states:

> During the time that he was detained at the Baker County Detention Center, [Plaintiff] had multiple "keep aways" or "separations" regarding other detainees. A "keep away" or "separation" is an order entered into the Detention Center records that directs staff to keep two detainees isolated from one another, usually out of concern that there could be fighting or other violence if the two detainees are near each other.

Id. ¶ 30. According to Rhoden, "[o]ne of the detainees against whom [Plaintiff] had a 'keep away' at some point during his incarceration was James Hill." Id. ¶ 31. Indeed, from November 2019 until he left the Baker County Detention Center, Plaintiff was in administrative confinement because another inmate had assaulted him. Plaintiff's Depo. at pp. 44:16–45:10; Rhoden Decl. ¶ 6. Additionally, when Plaintiff did share the law library with other inmates, he sometimes complained that he could not complete his legal work because he did not have enough time on the computer. See, e.g., Compl. at 5, 14.

Rhoden demonstrates non-retaliatory (and nondiscriminatory) reasons for not letting Plaintiff go to the law library with Mr. Hill and the other two inmates. The jail's policies did not permit detainees to go to the law library whenever they please, with whomever they please. Instead, eligible detainees in each dorm may use the law library at a pre-determined time on a rotating schedule. Rhoden Decl. ¶ 12; Richardson Decl. ¶¶ 6–7. Due to limited library

resources, not all inmates can use the library at the same time. Rhoden Decl. ¶¶ 10–11, 13; Richardson Decl. ¶ 6. Rhoden says that he never denied Plaintiff his regularly scheduled hour of library time, and that he decided how to allocate extra library time based only on space limitations and who had already received extra library time. Rhoden Decl. ¶¶ 17, 21. In his deposition, Plaintiff admitted that Rhoden sometimes allowed Plaintiff to use the law library and not other detainees, Plaintiff's Depo. p. 57:3–7, sometimes allowed other detainees to use the law library but not Plaintiff, id. pp. 56:23–57:2, and sometimes prevented anyone from using the law library, id. pp. 56:23–57:17. Contrary to Plaintiff's suggestion that his inability to go to the law library with Mr. Hill and the other two inmates on March 23, 2020, impeded his ability to meet a court deadline, no such court deadlines are reflected in the dockets of his pending cases. See Def. Exs. 4, 5, 7. And, if Plaintiff needed a fellow inmate's assistance with legal research, the jail's policies permitted him to submit a request for assistance to the pod supervisor, BCID Handbook § 25, but there is no evidence Plaintiff made such a request, Rhoden Decl. ¶ 19. Additionally, Plaintiff had "keep away" orders involving several other inmates, including Mr. Hill. Id. ¶¶ 30–31. Rhoden explained that he made decisions about who (if anyone) accompanied Plaintiff to the law library based on the need to ensure the safe and orderly operation of the jail. Id. ¶¶ 38–40. And Plaintiff sometimes failed to complete his work when he did share the law

library with other inmates because he would complain he did not have enough time on the computer. See Compl. at 5, 14.

Thus, Rhoden submits evidence that he did not let Plaintiff go to the law library with Mr. Hill and the other two inmates for reasons unrelated to Plaintiff's grievances or complaints. Plaintiff does not rebut Rhoden's proffered evidence. No reasonable jury could conclude, on this record, that a retaliatory motive was the "but for" cause of Rhoden preventing Plaintiff from going to the law library with three fellow inmates (or any other adverse action).

## B. Qualified Immunity

Rhoden invokes qualified immunity to the extent Plaintiff sues him in his individual capacity. See Motion at 22–24. An official sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id. In other words, "[q]ualified immunity shields an officer from suit when [he] makes a

decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Taylor v. Riojas, 141 S. Ct. 52, 53 (2020) (quoting Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden of demonstrating he was acting within his discretionary authority at the relevant time. Id. Plaintiff alleges facts showing that Rhoden was acting within the scope of his discretionary duties at the relevant times. Thus, to overcome qualified immunity, Plaintiff must show both that (1) Rhoden violated a constitutional right, and (2) this right was clearly established. See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). A court may address these two prongs in either order. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

Plaintiff has not shown that Rhoden violated a constitutional right because he fails to show that Rhoden was subjectively motivated to punish Plaintiff for filing grievances. Viewing the record in the light most favorable to Plaintiff, he has failed to produce evidence sufficient to demonstrate a retaliatory motive or to rebut Rhoden's proffered explanation for his actions.

Yet even if Plaintiff could show that Rhoden acted with some retaliatory motive, Plaintiff can show only mixed motives at best. "Where the facts assumed for summary judgment purposes in a case involving qualified

immunity show mixed motives (lawful and unlawful motivations) and preexisting law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity." <u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1364 (11th Cir. 2012) (quoting <u>Foy v. Holston</u>, 94 F.3d 1528, 1535 (11th Cir. 1996)); <u>see also</u> <u>Jackson v. Humphrey</u>, 776 F.3d 1232, 1240–41 (11th Cir. 2015) (in First Amendment retaliation case involving termination of prisoner's spousal visitation rights, prison officials were entitled to qualified immunity where the summary judgment facts showed mixed motives). Because the most Plaintiff can show is that Rhoden acted with a mix of lawful motives and retaliatory motives, and Plaintiff points to no preexisting law "dictat[ing] that the merits of the case must be decided in [his] favor," <u>Sherrod</u>, 667 F.3d at 1364, Rhoden is entitled to qualified immunity.

In light of the foregoing, it is hereby **ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

2. The Clerk shall enter judgment in favor of Defendant Wyatt Rhoden and against Plaintiff Hamza Maldonado.

3. The Clerk shall terminate any pending motions and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 24th day of March, 2022.

_____
BRIAN J. DAVIS
United States District Judge

lc 19

C:
Counsel of record
Pro se plaintiff